Hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Susan F. Hutchinson presiding. Please be seated. Your Honor, the final case we've got this morning is 2-25-0143. Denise Clark, formerly known as Elise Wald and Roger Clark, claim to be succulents. V. J.B. Architecture Group, Inc. Jonathan A. Dearest. Matthew Vaughn, Builders, Inc. Michael Baraboff. and Bill J. Montgomery. Defendants, please. Argument on behalf of the appellants, Mr. James G. Scott. Argument on behalf of Mr. Williams, Mr. William E. Turner. All right. Mr. McConnell, you may proceed. May it please the Court. My name is James G. McConnell, and I represent Elise and Roger Clark, plaintiff appellants in this case. The principal question in this case is why is the first sworn statement in a construction project so important that the Illinois legislature has passed not just one, but two separate statutes requiring contractors who work on owner-occupied single-family homes to warn the contractor that they're going to have to pay a fine. And I'll answer that question. Before you answer that question, let me ask you the last one, okay? Supreme Court Rule 341 requires that the appellant's brief include, quote, unquote, a concise statement of the applicable standard of review for each issue with citation to authority. You didn't do that in your brief, right? I cited all of the applicable authorities. Did you give a concise standard of review for each issue in the case? I don't recall. You didn't. Okay. Why not? The standard of review is after the trial, the judge signed an order granting a mechanics lien. My clients satisfied that judgment in order to protect themselves against the accrual of continuing interest and then appealed pursuant to the applicable provisions that we cited. Mr. Cherney consented to, to have that judgment reversed. And it's strictly a matter of law. There's no questions that I'm aware of in this case involving admissibility or refusal of admission of evidence. So you agree with all the findings of fact that were made by the trial court after the trial? No, I don't agree. Well, what's the standard of review with respect to the trial court's findings? There has to be some evidence supporting the findings. And I'm going to talk about why there isn't. And that's why I asked the initial question that I asked. Why is the first sworn statement on a construction project so important that the legislature has passed two statutes at different times requiring contractors to warn owner-occupied, single-family homeowners to ask for a sworn statement before giving any money? So what's the standard of review on that issue? The standard of review is he admits he didn't do it. There is no conflicting evidence that shows that there was any effort to do it. And, in fact, if you look at the deposition that's in the common law record beginning at C753, he didn't give a sworn statement in the beginning. He didn't give a sworn statement before he recorded the mechanics lien. And he refused to give sworn statements throughout the discovery process. No sworn statement was ever requested. Correct? They did request what Elise referred to, and there's no dispute that she did request. They didn't use the magic word sworn statement. And the reason they didn't use the magic word sworn statement is because the warning with the magic words wasn't in the contract, and they didn't give the consumer rights brochure. If those are, in fact, magic words, but in my view, Elise's request for a cost breakdown when confronted with five-figure additional costs for what the contractor described as changes, change orders, can't be answered if there's no principle initial sworn statement that says, what's the cost breakdown, trade by trade, supplier by supplier of labor, supplier by supplier of materials. But that's not what she asked for in that e-mail. She asked for a cost breakdown. She did not ask for who did it, who did what. She said, I want to know where my money's going, meaning who's the electrician, who's the carpenter, who's the plumber. Well, that's not what she said. She said, I want to know where my money's going. You know, the trial court, I mean, to the extent it's a fact that the trial court can find, as opposed to us looking at it and deciding, isn't that the standard for a sworn statement? The trial court found. They didn't ask for a sworn statement. So they didn't use it. But just a second. Let me go on. And I see that you apparently contend we can look past that and decide what that request was. And I'm still talking. So no need for you to get up. But the trial court went on to find in detail that the purpose of that request for a cost breakdown was to renegotiate the entire project. It was not to make sure they weren't exposed, let me finish, to liens from the subcontractor. So what do we do with that? Let me answer the question I asked. Why is the primary first sworn statement so important? It's important not only to prevent liens, but to identify who waivers should come from and to show the initial cost breakdown of the project. I've been practicing law in the construction industry for 52 years. But I think, really, Mike, what I said, what do we do with that, was really, and I should have been more clear, related to Justice Burkett's questions about the standard of review. Because if that's a fact that can be found, it's harder to undo an appeal than a determination of how to construe the statute, which might be de novo. The judge found that they didn't use the magic word sworn statement. The reason they didn't use the magic word sworn statement was because the draftsman of the contract, Mr. Bierutz, both contracts refused to include the statutorily required language from Section 5B of the Mechanics' Lien Act. And the reason he did that is because if he gave them the magic words, they would have used them. I know your argument is basically the failure to abide by the statute equates to contract, essentially. Yes. And you, I know your position is contrary to the Miller case, where the Supreme Court said, we note the statutory violation does not automatically render a contract unenforceable. The mere fact that a contract was performed in violation of law will not invalidate the resulting lien, if not seriously injurious to the public order, et cetera. And when was that case decided, Your Honor? It was 2010. And when was the Section 5B passed? I'm not, Section 5 didn't, how did it change substance? Section 5 said, not only, it did say not only. Section 5 didn't address the consumer rights brochure. It said this specific. You're talking about a different issue now. I'm talking about the sworn statement. I'm talking about the warning that Section 5B, little i, says must be in the contract in ten point, bold face, all caps, that says, ask for a sworn statement before you give the contractor any money. And they didn't put it in the contract the day they collected $10,000 for architectural services, which are lienable under the Act. And they didn't put it in the contract that they characterized as the construction contract. And the reason they didn't do it is so they could ask for exorbitant change order costs when there's no starting point made known to the owners of what, if I want an extra window and it's going to cost $1,500, what could I take out to balance that? I don't know because you didn't give me the initial sworn statement that the law says you should have warned me to ask for. Let me ask you this. Section 5, is there any remedy that's offered under subsection 5? I mean, did the General Assembly carve out a separate clause of action for violation of the Act? The General Assembly said you have to do it. Now, I'm asking you a question, please. Did the General Assembly carve out a separate remedy for violation of the Act? Yes or no? The General Assembly said it's got to be in there. My question is, did the General Assembly carve out a clause of action for violation of the Act? Yes or no? No. Okay. The clause of action has been decided by the courts after that law was passed that if you don't do it and you don't issue a sworn statement before recording a mechanics lien, which has been the law since before either one of these statutes was passed. Northwest Millwork covers whether or not a contract is invalidated for failure to provide a sworn contract or statement pursuant to section 5. Northwest Millwork was decided before section 5 was enacted, several years before. And for that reason, Northwest Millwork's opinion does not discuss section 5 because the lawyers who were here and the judges who were here and the ones who wrote that opinion didn't know that section 5B was going to come into existence. It came into existence years later. And there is no case decision decided after 5B was enacted that says the contract is still valid. Doesn't section 5 say it should be the duty of the contractor to give to the owner and the duty of the owner to require of the contractor before the owner or his agent, architect, or superintendent shall pay a cost? So we're talking about did the owner request or, well, actually it's not request, require. That's what section 5A says. Section 5B says if you're working on an owner-occupied single-family home, you must give this warning. It says shall provide, right? It says shall provide. Provide the warning. And they didn't. And that's why the magic words sworn statement were never used in Elyse's request. But let me go back to what I was going to read. It's a repetition of what's in subsection A. The law requires that the contractor shall submit a sworn statement. It's a repetition. I mean, it's reinforcement. It reinforces what subsection A says. Okay. Am I correct? Subsection A. Can I answer the question I started asking at the beginning of this? I've been working as a lawyer in the construction industry for 52 years. I have never. I have done 100-story office skyscrapers. I've done single-family homes. I've done multi-family residential. I've done municipal construction. I've done industrial construction. I've done commercial construction. I have never been in a project that didn't involve changes. Never in 52 years was there a project with zero changes. If you don't have the initial sworn statement before any money is handed over, there is no basis for determining what the change order cost should reasonably be. If you're putting in a kitchen and your initial estimate is for quartz countertops, and then you decide, I want an extra window, what can I take out to balance the cost of that extra window? Without that first sworn statement, there is no answer to that question. And that's why contractors leave them out. So you're saying that your clients would have automatically taken out something that they wanted in their house originally based upon a change order. Is that in the record? The record shows that on April 30, 2021, JB Architecture asked for change order price increases of $76,500 without any detailed justification and said, If you don't give us the check, we're going to stop working. On May 4, 2021, after some discussions, JB Architecture said, Okay, we'll reduce that number to $59,551.25, but we're not doing any more work. That's extortion. There's no explanation of what the changes are. There's no explanation of what the changes are from because there's no initial sworn statement. Well, who requested the change initially? She requested some changes. Okay, she wanted something that wasn't in the original contract. Yes. Okay. Did she say in that request, when you tell me what it's going to cost, I'm going to take something else out? She said, I want to know where the money is going so I can figure out how to deal with these changes. She didn't say, I want to take out counterparts. But you're saying that that's what the purpose of this is, to let people take out other things. That's the main purpose of the purpose. But what if they don't want to take anything else out? Then they can say that. But that conversation never took place because there was no sworn statement given before the letter of termination. No, there was none given at the time he took the money for the architectural drawings. There was none given at the time he took the down payment for the construction agreement. There was none given at the time of this conversation. Can I ask a question? Yes. The four prerequisites for an original contractor's lien claim were met here, correct? As the trial court found. There was a valid contract, right? The trial court found that it was valid because the trial court said that Northwest Millwork overruled Melissa. It doesn't overrule Melissa. It doesn't overrule Melissa. The trial court is bound. I'm sure you're familiar with the rules of stare decisis with respect to authority in the trial court. The trial court was bound to follow the most recent case on point from this district. Would you agree? The most recent case on point from this district when this case was tried was not Northwest Millwork. We've cited later cases in our brief from this district and other districts saying you can't file a mechanics lien if you don't give a sworn statement. Which case stands to that proposition where there hasn't been a request for a sworn statement? Which case? I could not find such a  You want the court to consider whether the judgment is against the manifest way to the evidence? When an opposite conclusion is apparent. And it wasn't. Clearly apparent. So, that's the extent of my argument. I ask that the judgment of the child court be affirmed. How does the request for a breakdown of expenses change anything? Does that change anything? No. Why not? I mean, I think counsel was trying to argue that it was, that's essentially a request for a sworn report. I'm sorry? That's essentially, counsel's arguing that was essentially a request for a sworn report. When the homeowners asked for a breakdown of expenses. They were provided. Right. That was, Mr. Baird's testified to that. I don't recall exactly, but. But that's not a substitute for a sworn report. No. No, and that's what the court ruled. And there's no case law that supports that argument. Nothing. Not one. And again, I come back to my argument that Mr. McConnell was a seasoned attorney. And he was obviously on the case prior to terminating him. This was nothing more than an attempt to stiff the contractors. That's all it was. And this court or no court should be allowed this kind of gamesmanship to occur. They did the work. There was no testimony refuting it or to the contrary. There was no testimony that said that the work was improper or inefficient. We even brought in the chief building inspector from the Village of Montgomery to testify that there was no violation of any code or any law. That everybody was properly licensed. And we still, we come to this, that any excuse not to pay is an excuse. And what's the date of the actual termination letter that was reported? It's Exhibit 157. The date of the termination is May 11, 2021. The e-mail exchanges were just subsequent to that. And I don't have the e-mail exchanges in front of me. But they were essentially we need to, the clerks were telling Mr. Beards that there was a money issue. And they needed to look for funds. And so they had to make some adjustments. And Mr. Beards said, fine. These are the adjustments. And I'd like to get paid for the work I already did. That's not extortion. That's part of contract. That was in the contract. That was the benefit of the bargain. They agreed to pay. And they didn't. They come up with these excuses that the Home Repair and Remodeling Act, that the Mechanics Lien Act says this or that. Those are just excuses that can't be accepted. Mr. McConnell should have said, well, why don't you give us sworn statements from your subcontractors, and then we'll pay you the balance of the work you already did. And you can go on your merry way, and we'll hire somebody else to finish off the project. He didn't do that. I'm not going to make the allegation that this was a plan, that this was somewhere in the works ahead of time. But this is what happened. This is the fact. And this should not be allowed to get away with paying nothing. Now, in the briefs that the appellant has submitted, now they're admitting that there was a contract and there was money owed. But they're saying, well, okay, but, you know, we shouldn't have to pay all these other things like attorney's fees to the defendant or their statutory interest. But there's nothing in the record that shows that they should be absolved of those responsibilities. The 10 percent interest is statutory. The attorney's fees was up to the discretion of the court. And I did testify under oath that as to my attorney's fees, and the judge accepted that testimony over Mr. McConnell's objection. And that's how we got to $143,000 from a project that was somewhere significantly less than that. But that's the risk they took. They just have to suffer the consequences. But those attorney's fees and costs were left out of the judgment as entered, weren't they? The attorney's fees were in the $143,000. But I guess what I'm trying to say is they were included in the bottom line of the judgment as entered. Are you with me? Yes. The judgment you proposed had a separate line item for attorney's fees and costs, correct? Yes. And that line item, those two line items were omitted from the judgment as entered, right? That's correct. But the trial court found in his order of March 31, 2045, that the fees were what they were, and, you know, what they had been stated in your judgment as proposed. And that dollar amount is the exact same. The bottom line figure is the exact same in the proposed judgment as in the judgment as entered, right? That's correct. Thank you. Nothing further. Thank you.  Mr. McConnell, if you wish to reply, you may do so at this time. Two things, briefly. Number one, I repeatedly ask for sworn statements from Mr. B. Ritz. In his deposition at page C754, I said, could you make a current sworn statement? This is April 6, 2023. Could you make a current sworn statement that balances to the amount that he's charging? Mr. Churney objected, saying it's actually more than this amount. Then I asked, could you make a sworn statement that balances to this amount or a greater amount? The answer is yes. The next question, will you do that and produce it? Mr. Churney said he's not answering that question. He's not producing a sworn statement. This is after the litigation began. In your letter of termination, the question that I asked was, in your letter of termination, did you cite the provisions of the requirement of sworn statements? Yes, I cited 5B1, little i, and 5B, little 3 as a reason, one of the reasons for the termination. Failure to comply with those. If I could go on. Wouldn't that, I mean, I'm, you know, the purpose of an appendix that you put in the briefs is to facilitate decision in the case. I'm having, and I know I can look at the record. I'm not saying I can't look at the record. But normally those types of documents like the construction agreement and any letters that you wrote during the period of time before. I can give you an exhibit number for the. But which exhibit is it? Are you talking about the exhibit that is on a standard form? No, I'm talking about my termination. It's exhibit 17. And what page is the. It's E77. But I'm talking about in this, in the brief index. Is it in your, is your letter in the brief index that you've provided? It's cited in the brief as page E77 of the exhibits in the record. No, it's not here.  And it says. J.B. Architech's purported contract dated December 14th, 2020, and signed by Roger and Elise Clark on December 15th, 2020, is terminated for violation of the Illinois Home Repair and Remodeling Act, 815 ILCS 513-1 and following, and for failure to comply with the provisions of the Illinois Mechanics Lien Act, including but not limited to 770 ILCS 60-5bii and iiii. So he knew at that time. Well, he knew that you thought that they were, or somebody knew that you thought they were in violation, but you didn't ask for a sworn statement there, did you? I mean, you're worried about making it worse. I didn't ask for a sworn statement there because counsel had called me up and said you're not getting out of this. He cursed at me.  And he said I'm following. You're going off the record. That's not in the record. It's not in the record. It's not in the record. I know that counsel characterized you as a bully at one point when this litigation began. Do not try to bully us. The question I asked counsel was did you ask for a sworn report in the termination letter? And the answer to that question was no, you did not. I said that that was the reason for termination. I did not say give us one. Right. You never requested a sworn statement before the litigation began, correct? No. No, I requested it repeatedly after the litigation began, and there's nothing in the statute that says that those requests are invalid. And he said he could make a sworn statement, but he wouldn't do it. Repeatedly. As a member, this is at page 769 of the time in our record. As a member of the AIA, are you familiar with the AIA form of sworn statement?  Could you fill that form out now with respect to this project as far as you and your subs worked on it? I could. Would you? I go by the advice of my counsel with that, as counsel told him not to answer. So we continued during discovery to try and get a current sworn statement or an original sworn statement, and he wouldn't do it. And the reason he wouldn't do it is the same reason contractors don't put these warnings in their contracts, because they want to say, unless you use the magic words, sworn statement, we don't have to give you one. All right. Your time is up. Do you have any other summaries? Oh, I have one other thing that we raised in our brief, and counsel has never addressed. In our notices of appeal, we asked for affirmance of the paragraph in Judge Prince's order of April 1st, 2025, paragraph 11, finding that plaintiff, paren, and I put this paren, because the plaintiffs are Elyse and Roger Clark, for principal interest and cost, the following sums from defendant, J.B., defendant, paren, J.B. Architecture Group, Inc., and Jonathan B. Riggs, close paren, total principal and interest to $85,866.97. Okay. That raises an issue for me. Had you, when I saw this in your reply brief, it set me to the project of understanding what it was you were complaining about, which took a certain amount of time, which I am happy to devote to making sure justice is done. But my question for you is, did you raise this in your opening brief? Yes. Okay. That we asked for affirmance, and that there was no offset in Judge Prince's order or the- No, I mean argue it. What I meant, I do agree in your notice of appeal, you do appeal. Oh, at the end of the day- Excuse me, counsel. Just, I have the ability to speak and intend to do so. I think, is it the April 1 order, the judgment order? Yes. The judgment foreclosure and sale. You did appeal that. I get that. That's not my question. My question is, you raised an argument that it took a lot to discern, but what I understood as best I could from what was stated in your reply brief, you seem to be saying that the judgment is not, for lack of a better phrase, not a set-off. You seem to be saying, well, the judgment is the $85,000, and from that we are entitled to a set-off of the monies we paid. This is what I said at page 26 of my brief. The trial court's failure to provide for its money judgment in favor of J.B. Architecture to be offset by its finding in paragraph 11 of its final order, C-2139, that there is no- Okay, you're right. Yeah, thank you. And I'll tell you what, now I know why I was confused. You put that in your conclusion of your brief. I'm not making any complaint here. It's just an observation. I went back looking, where in the heading is this issue raised? Yeah. Okay, to the extent that raises the issue in your opening brief, and you met it again in your reply brief, you pointed out they didn't say anything about it, and you're right, they didn't. I'm still speaking, counsel. My point is, after I set to the project of figuring out what we were trying to complain about, then I understood that the trial court in his written order, page 18, he netted out the setup. He netted out what they had already paid and entered a judgment amount that I think was- No. Excuse me, about $65,000. And then added to that interest, and that is how you get up to the $85,000 figure, which is in the judgment of foreclosure and sale that was entered April 1. I'm still speaking. And you will find that if you're not planning what you're going to say, you have more ability to understand what my question is or what my concern is. The trial court netted it out, $85,000 was the figure, to which was added in the judgment order, although there were a couple lines left out, the 53,000 attorney's fees and, like, 4,200 in costs. That netted up to the figure that you mentioned, which is, I think, $143,000, something like that. But as I read the record, one, the trial court clearly gave fees in the amount of $53,000. That's in a separate order. It's not in the judgment of foreclosure and sale as entered. It is in the judgment of foreclosure and sale as proposed. And the trial court took care to make sure that, as I understand the record, took care to make sure that your clients were given the benefit of the set-off, that they deserve their previous payments. Thank you. The judge interpreted what he signed as being part of the judgment in favor of B Ritz, although it says it's in favor of the Clarks. And he never set off the $85,000 against the total that was entered in favor of B Ritz. I'm going to make one comment. You're way beyond the scope of what a rebuttal should be. So you're done. Okay. Yes, the time is up. And we will take this matter under consideration. We will issue a decision in due course. We now stand in recess.